UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WARREN,<br><br>   Plaintiff,<br><br>  v.<br><br>PNC BANK NATIONAL ASSOCIATION,<br><br>   Defendant. | Case No. 22-cv-07875-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 17 |

  Defendant PNC Bank National Association ("PNC") moves to dismiss this complaint brought by plaintiff Christopher Warren, who alleges that PNC violated federal regulations and California law by failing to notify or provide him with certain information before foreclosing on and selling his home. The motion is GRANTED in part and DENIED in part. Warren has plausibly alleged violations of the California Homeowner Bill of Rights ("HBOR") and Real Estate Settlement Procedures Act ("RESPA") based on PNC's alleged failure to provide him information before and after filing a notice of default, and alleged failure to respond to his notice of error. His negligence claim may proceed based on the statutory duties imposed by the HBOR and RESPA and the alleged breaches of those duties. His Unfair Competition Law ("UCL") claim may also proceed based on these predicate violations.

  Other claims fall short and are DISMISSED with leave to amend. As pleaded, Warren's wrongful foreclosure claim is too conclusory to proceed, as is his cancellation of instruments claim. The UCL claim is also too conclusory with respect to the "unfair" and "fraudulent" prongs. To the extent that it relies on these theories of liability, it is DISMISSED.

**BACKGROUND**

  According to the complaint, Warren was "the rightful and lawful owner" of a residence

located at 1907 S. Forrest Hill Place in Danville, California ("the property"). Compl. [Dkt. No. 1-1] ¶ 1. It alleges that in January 2015, Warren obtained a $528,000 mortgage loan on the property from lender MB Financial Bank, N.A., which was memorialized by a deed of trust. *Id*. ¶ 9. The deed of trust was allegedly assigned to PNC on August 2, 2018. *Id*. ¶ 12.

On January 17, 2021, Warren allegedly tried to pay his mortgage payment on PNC's website, but "learned that his payment had not gone through and applied to his account." *Id*. ¶ 10. He "immediately contacted PNC" and notified it of the error, tendered $10,000 "to correct any arrears as a result of the error in payment," and told PNC that he was renovating the property "in preparation to place it on the market." *Id*. At some point (although the complaint does not specify when), Warren also attempted to contact PNC "to obtain a debt validation, alternatives to foreclosure as he was planning on selling, and [a] loan modification," but PNC allegedly "would not take his phone calls or respond to his correspondence." *See id*. ¶ 11.

On June 15, 2022, the complaint alleges that a notice of default and election to sell under a deed of trust was recorded at the Contra Costa County Recorder's Office. *Id*. ¶ 13. A notice of trustee's sale was recorded on August 9, 2022, with a sale date set for November 8. *Id*. ¶ 14.

Between October 26 and November 4, 2022, the complaint alleges that Warren "sent several correspondences to PNC" and "tendered payment in the amount of $19,500.00, $2457.25, while referencing his previous payment of $10,000." *Id*. ¶ 15. It further alleges that Warren "never heard from PNC . . . either in response to his correspondence or to explore alternatives to foreclosure, at any time." *Id*.

The complaint alleges that PNC foreclosed on the property and recorded a trustee's deed upon sale, but does not specify when. *See id*. ¶ 64. According to a copy of the deed upon sale proffered by PNC, it was recorded on January 3, 2023. *See* RJN [Dkt. No. 18] Ex. 4.[1]

---

[1] PNC requests that I take notice of four documents related to the property that were each recorded in the Contra Costa County Recorder's Office: (1) the June 15, 2022, notice of default; (2) a substitution of trustee recorded on the same day; (3) the September 21, 2022, notice of trustee's sale; and (4) the deed upon sale. *See* RJN, Exs. 1-4. Courts commonly take notice of such documents. *See, e.g., Mejia v. JPMorgan Chase Bank, N.A.*, No. 21-CV-01351-HSG, 2021 WL 2258710, at *2 (N.D. Cal. June 3, 2021) (taking notice of recorded notice of default, notice of trustee's sale, and trustee's deed upon sale) *Freitas v. Bank of Am. N.A.*, No. C-19-03347-WHA, 2019 WL 5872415, at *3 (N.D. Cal. Nov. 11, 2019) (taking notice of recorded substitution of

1      Warren sued PNC in state court on November 25, 2022, alleging violations of RESPA, the

2 HBOR, and UCL, along with claims of negligence, wrongful foreclosure, and cancellation of

3 instruments. *See* Dkt. No. 1-1. PNC removed the matter to this court on December 9, 2022. Dkt.

4 No. 1. It then moved to dismiss the complaint. Dkt. No. 17.

**LEGAL STANDARD**

6      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

7 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the

8 plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

9 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff

10 pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for

11 the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There

12 must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts

13 do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

14 "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

15      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

16 court accepts his allegations as true and draws all reasonable inferences in his favor. *See Usher v.*

17 *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to

18 accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

19 unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

20      If the court dismisses the complaint, it "should grant leave to amend even if no request to

21 amend the pleading was made, unless it determines that the pleading could not possibly be cured

22 by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making

23 this determination, the court should consider factors such as "the presence or absence of undue

24 delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

25 undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

27 trustee, notice of trustee's sale, and trustee's deed upon sale). I will do the same, as these documents are matters of public record not generally subject to dispute, and Warren does not
28 appear to oppose the request. *See* Fed. R. Evid. 201(b). I will also note that the notices of default and of trustee's sale are attached to the complaint as Exhibits C and D. *See* Compl., Exs. C, D.

(left margin: United States District Court / Northern District of California)

*Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. CALIFORNIA HOMEOWNER BILL OF RIGHTS CLAIMS

The HBOR "provide[s] protections for homeowners facing non-judicial foreclosures and reform[s] aspects of the foreclosure process." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1087 (N.D. Cal. 2015) (citation omitted and cleaned up). Warren asserts two violations of the HBOR: sections 2923.5 and 2924.9 of the California Civil Code. Compl. ¶¶ 18-34.[2]

#### A. "Owner-Occupied"

To state violations of sections 2923.5 and 2924.9, Warren "must allege that the subject property is owner-occupied." *See Greene v. Wells Fargo Bank, N.A.*, No. 15-CV-00048-JSW, 2016 WL 360756, at *2 (N.D. Cal. Jan. 28, 2016). California Civil Code section 2924.15 provides that sections 2923.5 and 2924.9 "shall apply only to a first lien mortgage or deed of trust" that is either "secured by owner-occupied residential real property containing no more than four dwelling units" or "secured by residential real property that is occupied by a tenant and that contains no more than four dwelling units" and meets certain other conditions. Cal. Civ. Code § 2924.15(a). "'[O]wner-occupied' means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes." *Id*. § 2924.15(a)(1)(B).

PNC argues that Warren's first and third claims fail because the complaint does not allege that the property is "owner-occupied." Mot. to Dismiss ("MTD") [Dkt. No. 17] 4:17-5:4. Instead, PNC contends, the complaint "simply alleges in a conclusory manner" that Warren was the "rightful and lawful owner" of the property. *See id*. at 4:28-5:3 (citing Compl. ¶ 1).

Although Warren does not address this argument in his opposition, PNC's argument falls short. It overlooks allegations within the complaint that Warren "owned the property and has lived within subject property years prior to foreclosure and when the notice of default was issued." *See* Compl. ¶¶ 20, 32. PNC also brushes aside the allegation that the property "is [sic] primary

---

[2] Warren alleged a third HBOR violation in his complaint, of section 2924(a)(1), but conceded it in his opposition. *See* Compl. ¶¶ 23-30; Oppo. [Dkt. No. 22] 5:13-14 ("Plaintiff will cease to pursue a cause of action for violation of Civ. Code § 2924(a)(1)."). His second claim is therefore DISMISSED with prejudice.

residence." *See id*. ¶ 1. This appears to be a typographical error; coupled with the other allegations that Warren lived at the property for years prior to foreclosure and when the notice of default was issued, it plausibly supports that the property was "owner-occupied."

### B. Material Violations

Next, PNC argues that Warren's first and third claims should be dismissed because the complaint does not allege specific facts showing that the alleged violations of sections 2923.5 and 2924.9 were "material." MTD at 5:5-6.1. Certain sections of the HBOR rely on California Civil Code section 2924.12 for remedies, which provides in part:

> After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages . . . resulting from a material violation of section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale.

Cal. Civ. Code § 2924.12(b). But it only provides remedies for "material" violations of these provisions. *See id*.

There is some disagreement over whether materiality should be considered at the pleadings stage. *See Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 869 (N.D. Cal. 2017) ("Some [district courts] have concluded that materiality is a factual question that should not be resolved on a motion to dismiss.") (citing cases). While Warren need not *prove* materiality at this point, I agree that he "must plead something to satisfy 2924.12's materiality requirement"—just as he must with any element of his claims. *See Galvez v. Wells Fargo Bank, N.A.*, No. 17-CV-06003-JSC, 2018 WL 4849676, at *5 (N.D. Cal. Oct. 4, 2018). Courts who have weighed materiality at this juncture have considered a violation "material" if it affected the plaintiff's loan obligations, disrupted her loan modification process, or caused her to suffer harm. *See Cardenas*, 281 F. Supp. 3d at 869-870; *see also Billesbach v. Specialized Loan Servicing LLC*, 63 Cal. App. 5th 830, 837 (2021) ("A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan-modification process, or otherwise harmed the borrower."); *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 304 n.14 (2022) (adopting definition of "material" used in *Billesbach* and *Cardenas*).

5

1   As a threshold matter, PNC argues that violations of both 2923.5 and 2924.9 must be
2   material.  *See* MTD at 6:1.  But section 2923.5 is not listed among the statutes covered by section
3   2924.12—section 2923.55 is.  *See* Cal. Civ. Code § 2924.12(b).  Although the two provisions are
4   "substantively similar," section 2923.55 "generally applies only to larger mortgage servicers,"
5   while section 2923.5 "applies to smaller servicers."  *Billesbach*, 63 Cal. App. 5th at 844 n.7.  PNC
6   has not cited to any authority confirming that section 2923.5 falls within section 2924.12's ambit.
7   *See* MTD at 5:5-6:1; Reply [Dkt. No. 23] 2:12-18.

8   Assuming (without deciding) that it does, Warren's complaint plausibly alleges a material
9   violation.  Section 2923.5 prevents a mortgage servicer, mortgagee, trustee, beneficiary, or agent
10  from recording a notice of default until 30 days after it has contacted the borrower to "assess the
11  borrower's financial situation and explore options for the borrower to avoid foreclosure" or 30
12  days after satisfying "due diligence requirements."  Cal. Civ. Code § 2923.5(a)(1)(A).  Under the
13  latter, a notice of default may be filed "when a mortgage servicer has not contacted a borrower . . .
14  provided that the failure to contact the borrower occurred despite the due diligence of the
15  mortgage servicer."  *Id*. § 2923.5(e).  The statute then sets forth what constitutes "due diligence,"
16  which includes attempts to contact the borrower by first-class mail, "by telephone at least three
17  times at different hours and on different days," and by certified letter.  *Id*.

18  The essence of Warren's claim is that PNC never contacted him before filing the notice of
19  default and thus, the filing of that notice was improper.  *See* Compl. ¶¶ 18-22.  This violation is
20  plausibly material.  Filing a notice of default is the first step in the foreclosure process.  *See* Cal.
21  Civ. Code § 2924.  Section 2923.5 requires a servicer to contact the borrower (or make diligent
22  efforts to do so) to "assess the borrower's financial situation and explore options for the borrower
23  to avoid foreclosure."  *See id*. § 2923.5(a)(2).  As alleged, PNC did not contact Warren.  *See*
24  Compl. ¶ 20.  It is plausible, then, that this disrupted his loan modification process (by closing that
25  process off before it could even begin) or caused him harm (by foreclosing upon his home without
26  proper notice).

27  *Billesbach* offers helpful framework.  There, the California Court of Appeal held that
28  > where a mortgage servicer's violations stem from its failure to communicate with

> the borrower before recording a notice of default, the servicer may cure these violations by . . . postponing the foreclosure sale, communicating with the borrower about potential foreclosure alternatives, and fully considering any application by the borrower for a loan modification.

*Billesbach*, 63 Cal. App. 5th at 837. "Following these corrective measures," the court wrote, "any remaining violation relating to the recording of the notice of default is immaterial." *Id*. Warren's complaint is absent of any similar allegations that would render any of the purported violations immaterial. *See generally* Compl.

The complaint plausibly alleges a material violation of section 2924.9 for similar reasons. Under section 2924.9, unless a borrower has previously exhausted their first lien loan modification process, a mortgage servicer must send the borrower a written communication within five business days after recording notice of default. Cal. Civ. Code § 2924.9(a). That communication must include certain information: (1) that the borrower may be evaluated for a foreclosure prevention alternative; (2) whether the borrower must submit an application in order to be considered for such; and (3) the means and process by which the borrower may obtain an application for a foreclosure prevention alternative. *Id*.

According to PNC, the complaint "contains no facts showing that PNC's purported violations of HBOR prevented plaintiff from a meaningful opportunity to be considered for a loan modification or caused plaintiff harm that would not have been suffered otherwise," and instead "reflect[s] only that plaintiff defaulted on the loan and made a failed attempt to reinstate the loan, which resulted in foreclosure." MTD at 5:20-27.

Warren responds that PNC did not contact him regarding foreclosure alternatives before or after recording the notice of default, and therefore his claim survives. Oppo. at 9:1-7. Although he does not specifically address whether this was a material violation, the complaint plausibly alleges this. *See id*. It alleges that a notice of default was filed on June 15, 2022, and that PNC failed to notify him of foreclosure prevention alternatives as required. Compl. ¶¶ 32-33, 34 (alleging that he "did not receive any phone calls or phone messages and did not receive any pieces of mail" that referred to foreclosure alternatives). It further alleges that if Warren had received "such contact and communication, he would have taken action to avoid the foreclosure of

7

the subject property with other lending sources." *Id.* ¶ 34. Instead, PNC allegedly foreclosed on the property and recorded a trustee's deed upon sale. *Id.* ¶ 64.

Warren has plausibly pleaded that PNC's violation of section 2924.9 materially harmed him, for similar reasons as above. Based on the facts alleged, PNC's failure to communicate about foreclosure prevention alternatives disrupted his loan modification process or otherwise harmed him by closing the door to anything other than foreclosure.

Warren has plausibly pleaded material violations of section 2924.9 and 2923.5.

**C. Section 2923.5**

PNC argues that Warren's section 2923.5 claim otherwise fails because the notice of default attached to his complaint includes a declaration of compliance with this box checked:

> The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. The due diligence efforts were satisfied on March 3, 2022.

*See* MTD at 6:16-7:7 (citing Compl., Ex. C). According to PNC, because Warren's "vague and conclusory allegations" that it failed to comply with section 2923.5 are "expressly contradicted by the statement" in Exhibit C, the notice of default "is controlling" and the claim should be dismissed. *Id.* at 7:1-7.

Warren responds that regardless of the declaration that PNC attempted contact, "none was made." Oppo. at 7:20-22. He contends that although he was "available by phone and mail," he "never received a phone call from PNC nor any written notifications regarding [his] available options." *Id.* at 7:22-23.

This boils down to a factual dispute that is inappropriate to decide on a motion to dismiss. The notice of default attached to the complaint shows that a PNC agent (identified only as "Authorized Signer" on the form, with an unintelligible signature) attested that they tried to contact Warren "as required" by section 2923.55(f). *See* Compl., Ex. C. But the form does not detail what those efforts entailed, and a checked box does not ensure that the law was followed. Moreover, Warren has plausibly alleged that he never heard from PNC at any point before foreclosure. *See, e.g.*, Compl. ¶ 20 ("Plaintiff received no mail or messages from PNC.").

8

1    Whether PNC in fact attempted to contact Warren will prove out as discovery is conducted and the
2    case progresses. For now, he has sufficiently alleged a violation of section 2923.5.

3    **II.     WRONGFUL FORECLOSURE**

4    Wrongful foreclosure "is an equitable action to set aside a foreclosure sale, or an action for
5    damages resulting from the sale, on the basis that that the foreclosure was improper." *Sciarratta v.*
6    *U.S. Bank Nat'l Ass'n*, 247 Cal. App. 4th 552, 561 (2016). To state a claim for wrongful
7    foreclosure under California law, a plaintiff must allege: "(1) the trustee or mortgagee caused an
8    illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a
9    mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in
10   cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the
11   amount of the secured indebtedness or was excused from tendering." *Cardenas*, 281 F. Supp. 3d
12   at 871 (citation omitted). "[M]ere technical violations of the foreclosure process will not give rise
13   to a tort claim; the foreclosure must have been entirely unauthorized." *Sciarratta*, 247 Cal. App.
14   4th at 562 (citation omitted). PNC challenges Warren's wrongful foreclosure claim on the second
15   and third elements. MTD at 9:12-10:28.

16   I agree with PNC that this claim falls short. First, it is unclear what Warren bases it upon.
17   The complaint alleges that PNC "caused an illegal, fraudulent, or willfully oppressive sale of the
18   subject property pursuant to a power of sale in a mortgage or deed of trust." Compl. ¶ 65. This is
19   too conclusory on its own; it merely repeats the elements of the claim. And unlike Warren's other
20   claims, it is not apparent from the complaint itself which of PNC's alleged wrongdoings the basis
21   of this claim. By way of example, it could be based on PNC's alleged improper filing of the
22   notice of default before any attempts to contact him, discussed in more detail above. But it could
23   also be based on the allegation that the notices of default and of trustee's sale were void because
24   the purported trustee "failed to record a substitution of trustee." *See id*. ¶ 28.[3] Because "mere
25   technical violations of the foreclosure process" do not give rise to a wrongful foreclosure claim,
26   and because the plaintiff must "show both that there was a failure to comply with the procedural

---

[3] If this forms the basis of Warren's claim, PNC contends a substitution of trustee was recorded on June 15, 2022. *See* MTD at 9:26-10:1 (citing RJN, Ex. 2).

1  requirements for the foreclosure sale and that the irregularity prejudiced the plaintiff," more
2  specific allegations are needed for Warren to plausibly state his claim. *See Sciarratta*, 247 Cal.
3  App. 4th at 562; *see also Morris*, 78 Cal. App. 5th at 294-95.

4        Similarly, the complaint is devoid of any allegations that Warren tendered the amount of
5  the mortgage. *See generally* Compl. Instead, it summarily argues that he "is excused from the
6  tender requirement because of PNC defendant's violations of" the HBOR. *See id*. ¶ 66. This too
7  is conclusory, as Warren cites to no case law or other authority in the complaint (or his opposition)
8  that supports this. *See id.*; *see also* Oppo. at 9:22-10:27.[4] Again, more specificity is needed for
9  him to plausibly state a wrongful foreclosure claim.

10        Warren's wrongful foreclosure claim is DISMISSED with leave to amend.

11  **III.   CANCELLATION OF INSTRUMENTS**

12        Under California Civil Code section 3412, a court may order the cancellation of a written
13  instrument "in respect to which there is a reasonable apprehension that if left outstanding it may
14  cause serious injury to a person against whom it is void or voidable." To plead a claim to cancel
15  an instrument, a plaintiff must plausibly allege: "(1) the instrument is void or voidable due to, for
16  example, fraud; and (2) there is a reasonable apprehension of serious injury including pecuniary
17  loss or the prejudicial alteration of one's position." *U.S. Bank Nat'l Ass'n v. Naifeh*, 1 Cal. App.
18  5th 767, 778 (2016).

19        PNC again attacks tender, arguing that because Warren did not adequately plead tender in
20  his complaint, this claim should also be dismissed. MTD at 12:1-16. "The tender rule applies to
21  equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument,
22  or for wrongful foreclosure." *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 870 (N.D. Cal.
23  2015). The rule is "premised on the notion that it would be futile to set aside a foreclosure sale on
24  the technical ground that notice was improper, if the party making the challenge did not first make
25  full tender and thereby establish his ability to purchase the property." *Santana v. BSI Fin. Servs.,*

---

[4] PNC only argues that Warren "does not allege in his complaint that he tendered" the amount he owed, ignoring the allegation in the complaint that he was excused from doing so. *See* MTD at 10:19-28.

*Inc.*, 495 F. Supp. 3d 926, 937 (S.D. Cal. 2020) (citation omitted). However, there are exceptions to the tender rule, including that if a plaintiff properly alleges that a "foreclosure was void and not merely voidable, tender [is] not required to state a cause of action for quiet title or for cancellation of instruments." *Sciarratta*, 247 Cal. App. 4th at 568.

The problem with this claim is two-fold. First, Warren does not sufficiently allege that an instrument was void or voidable, as required to state the first part of the claim. *See Naifeh*, 1 Cal. App. 5th at 778. The complaint alleges that the notice of default and election to sell under deed of trust is void because it does not contain a declaration under the penalty of perjury, which Warren seems to allege is required by California Code of Civil Procedure section 2015.5(a). *See* Compl. ¶ 13. But the complaint does not adequately connect the dots between this provision and the documents at issue—i.e., it does not allege that such a declaration is required for these types of documents. *See id*. The complaint further alleges that the notice of default is "further void or voidable" because the purported trustee (identified as Quality Loan Service Corp.) "failed to record a substitution of trustee with the Solano County Recorder's Office." *Id*. ¶ 28. It is unclear why a substitution needed to be filed in Solano County when the property at issue is located in Contra Costa County. Moreover, a substitution of trustee was filed on June 15, 2022, substituting Clear Recon Corp. as the trustee. *See* RJN, Ex. 2. Warren's opposition does not mention the word "void" or "voidable," let alone expand on his earlier allegations. *See generally* Oppo.

This leads to the second issue with Warren's claim. Because he has not adequately alleged that any instrument was void or voidable, he has not adequately alleged tender—either that it was satisfied or that he was excused from doing so. As explained, the allegations in the complaint regarding tender are too conclusory to proceed. Without more specificity, I cannot evaluate whether he is even required to state tender as part of this claim.

Warren's cancellation of instruments claim is DISMISSED with leave to amend.[5]

### IV.   RESPA CLAIMS

"RESPA regulates the servicing of mortgage loans." *Hahn v. Select Portfolio Servicing,*

---

[5] Because I am dismissing the claim on these grounds, I need not reach PNC's argument that the complaint fails to allege a serious injury. *See* MTD at 11:16-28.

*Inc.*, 424 F. Supp. 3d 614, 624 (N.D. Cal. 2020) (citing 12 U.S.C. § 2605). Regulation X implements RESPA. *See id*. The complaint alleges two violations of Regulation X: section 1024.35 and section 1024.38. *See* Compl. ¶¶ 35-49.[6]

Section 1024.35 requires servicers to take certain steps upon receipt of "any written notice from the borrower that asserts an error" and includes certain information, including the borrower's name, information that allows the servicer to identify the borrower's mortgage loan account, and "the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). Under section 1024.38, servicers must "maintain policies and procedures that are reasonably designed to achieve" certain enumerated objectives, including providing borrowers with timely and accurate information in response to requests for information. *See id*. §§ 1024.38(a), (b).

PNC first argues that a January 17, 2021, letter that Warren allegedly sent PNC does not constitute a notice of error under section 1024.35 because it "fails to specifically identify any errors in the servicing of the loan." MTD at 15:15-25.[7] According to PNC, "there is no language in the letter which specifically identifies any" of the errors covered by section 1024.35; no language "which specifically requests PNC to do anything, make corrections, or to provide a response"; and "no language whatsoever clearly and unequivocally stating that PNC has made any servicing errors which must be rectified." *Id*. at 15:17-21.

The complaint alleges that after Warren tried to make his mortgage payment on January 17, 2021, and learned that his payment had not been applied to his account, he "immediately contacted" PNC and notified it of the payment error. Compl. ¶ 10 (citing Ex. B). It then attaches the letter that PNC takes issue with. *See id*., Ex. B. But the letter appears to provide sufficient detail to constitute a notice of error—at least as articulated in section 1024.35(a). It includes

---

[6] The complaint alleges that these are violations of the Truth in Lending Act ("TILA"), which is found beginning at 15 U.S.C. § 1601. *See* Compl. ¶¶ 35-49. Although PNC noted the apparent discrepancy in its motion to dismiss, Warren does not offer any clarification in his opposition. *See* MTD at 14 n.2; Oppo. at 9:9-21. If Warren attempts to plead something other than violations of RESPA and Regulation X in these claims, he should clarify this in an amended complaint.

[7] PNC alternatively argues that if Warren indeed asserts a claim under TILA, it is time-barred. *See* MTD at 16:1-22. I need not consider this issue unless Warren clarifies that he in fact brings a claim under TILA rather than RESPA.

12

Warren's name, the loan number, and address of the property at issue. *See id.*; *see also* 12 C.F.R. § 1024.35(a) (providing that a notice of error must include "the name of the borrower" and "information that enables the servicer to identify the borrower's mortgage loan account"). And although the letter does not cite a specific provision within section 1024.35(b) in identifying the purported error, the information that Warren allegedly sent plausibly describes that error: that a "mix up regarding payments" had occurred, where Warren attempted to pay his mortgage payment online, but that PNC did not receive the payment made. *See* Compl., Ex. B. Warren then clarifies that he was "not sure what happened or how this transpired." *See id.*

Accepting Warren's allegations as true, it is reasonable to infer that this provided PNC sufficient notice of one of the errors listed in section 1024.35(b). The circumstances that Warren's notice described could indicate a failure to accept payment, a failure to apply an accepted payment, or a failure to credit a payment to Warren's account. *See* 12 C.F.R. § 1024.35(b)(1)-(3) (listing these among the categories of errors). It could also constitute "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See id.* § 1024.35(b)(11).

As alleged, PNC was then required to acknowledge Warren's notice of error within five days of receipt, and either correct the error or, after conducting a reasonable investigation, inform him that no error had occurred. *See id.* §§ 1024.35(d), (e)(1). According to the complaint, PNC never responded to Warren. *See* Compl. ¶ 11. Without further argument from PNC, it appears that the notice of error was sufficient for pleading purposes and Warren's claim arising from alleged violations of section 1024.35 may proceed.

Warren has not, however, plausibly stated a violation of section 1024.38. PNC argues that this claim fails as a matter of law because this regulation does not create a private right of action. MTD at 17:4-8. Although PNC relies on district court cases from Michigan, at least some courts within this Circuit have found the same. *See Courtois v. Shellpoint Mortg. Servicing, LLC*, No. CV-20-4095, 2020 WL 13586024, at *1 (C.D. Cal. May 26, 2020) ("numerous other courts have concluded that 12 C.F.R. § 1024.38 does not provide a private right of action"); *Minie v. Selene Fin. L.P.*, No. 18-CV-05364, 2019 WL 199948, at *5 (W.D. Wash. Jan. 15, 2019) (noting that "[t]he plaintiff concedes that there is no private right of action for" section 1024.38).

13

1    Warren wholly ignores this argument in his opposition. *See* Oppo. at 9:9-21. Without case law or other authority indicating that he may assert a claim for a violation of section 1024.38, it is DISMISSED with prejudice.

### V.     NEGLIGENCE

The elements of a negligence claim are well-known: (1) duty; (2) breach; (3) causation; and (4) damages. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018). PNC argues that Warren's negligence claim fails on the first two elements. MTD at 12:17-14:10. I disagree.

Beginning with duty, PNC contends that Warren has not alleged that it owed him any statutory or tort duty of care. *Id*. at 12:20-13:20. Answering the statutory question is all that is needed for the claim to proceed. The complaint appears to rely on a statutory duty, alleging that PNC breached its "duty of ordinary care and good faith" and "duty not to put plaintiff in a worse position" when it violated the HBOR, and that PNC "owed plaintiff a duty of care because [its] activities violated affirmative statutory duties extrinsic to loan modification." *See* Compl. ¶¶ 51-59. According to PNC, because Warren's HBOR claims fail, he has not shown such a statutory duty. MTD at 12:20-26. But Warren has plausibly alleged violations of the HBOR, which plausibly support a duty of care. *See Sheen v. Wells Fargo Bank, N.A.,* 12 Cal. 5th 905, 920 (2022) ("A duty of care may arise through statute or by operation of the common law.") (citation and quotations omitted); *Marcus v. Nationstar Mortg. LLC*, 2022 WL 1486831, at *1 (9th Cir. May 1, 2022) ("HBOR creates statutory duties concerning certain modification applications"); *Ogamba v. Wells Fargo Bank, N.A.*, No. 17-CV-01754, 2018 WL 2842495, at *4-5 (E.D. Cal. June 11, 2018) (allowing negligence claim to proceed because the plaintiff had plausibly alleged violations of the HBOR and the negligence claim "derives from the HBOR violations").

Although the California Supreme Court recently settled a long-running split over whether a lender owed a borrower a *common law* duty of care to "process, review and respond carefully and completely to a borrower's loan modification application," that case, which PNC relies upon in arguing against such a duty here, is distinguishable. *See Sheen*, 12 Cal. 5th at 915 (cleaned up). The issue is not whether Warren's loan modification application was carefully processed,

14

reviewed, and responded to; instead, it is whether PNC provided him with certain information as required by the HBOR (and RESPA). Moreover, the *Sheen* court reiterated—multiple times—that the question was whether the narrow duty described by the plaintiff existed under the common law. *See, e.g., id.* at 920 ("Plaintiff does not identify any statute or regulation that requires Wells Fargo to treat his modification applications with due care."), 921 ("He does not ground such a duty in the extensive body of state and federal legislation and regulations that address mortgage servicing . . . including the California Homeowner Bills of Rights."), 921-22 ("Likewise, plaintiff does not bring a claim under any other state or federal law governing mortgage loan modifications, such as . . . the Real Estate Settlement Procedures Act."). Warren *does* ground his negligence claim in such statutes and regulations: the HBOR and RESPA.

Finally, and most importantly, *Sheen* listed examples of where "HBOR and complementary federal legislation specify various affirmative actions a servicer is obligated to take," including section 2924.9 of the California Civil Code—only of the violations that Warren plausibly alleges here. *See id*. at 921.

Because Warren has plausibly alleged violations of the HBOR and RESPA, he has plausibly alleged that PNC owed him a statutory duty of care. This is enough for the claim to proceed, without deciding whether such a duty also exists under the common law.

He has also adequately alleged a breach of these duties, based on PNC's alleged failure to provide him certain information before foreclosing upon his home. PNC's argument that his allegations are too conclusory to show breach are not persuasive, for reasons similar to those that I explain above. *See* MTD at 13:21-14:10. Warren's negligence claim may proceed.

**VI.    UCL CLAIM**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. It "operates as three-pronged statute," where each "captures a separate and distinct theory of liability." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (citations and quotations omitted). Warren's complaint alleges violations of all three of the statute's prongs. Compl. ¶ 75.

The "unlawful" prong of the UCL "incorporate[s] other laws and treats violations of those

laws as independently actionable unlawful business practices under state law." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 758 (N.D. Cal. 2019) (citation omitted). As a result, "[v]iolation of almost any federal, state, or local law may serve as the basis for a claim under the unlawful prong of the UCL." *Id*. (same). Because Warren has plausibly alleged violations of the HBOR and RESPA, he has plausibly alleged a violation of the UCL's "unlawful" prong.

The "unfair" prong requires proving either: (1) "the public policy which is a predicate to a consumer unfair competition action" is "tethered to specific constitutional, statutory or regulatory provisions," or (2) that the challenged business practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (citations omitted). The complaint does not provide sufficient detail to evaluate Warren's "unfair" UCL claim. Instead, it makes a laundry list of allegations to support its claim that PNC violated all three prongs of the UCL, including many that do not appear to apply to Warren's case. For example, it alleges that PNC used a "purposefully lengthy" loss mitigation review process "so that loss mitigation and loan modification will not be timely provided"; "purposefully caused a lengthy delay in order to cause plaintiffs and borrowers like plaintiffs to incur continuing interest charges that would otherwise be mitigated, late fees, and untimely foreclosure costs"; "purposefully impeded timely loss mitigation denial or approval while expressing that plaintiff are [sic] in review," which "prevents plaintiff from seeking other external loss mitigation options including abandoning the property and/or short sale"; and that "the information provided to plaintiff was certainly misleading and not consistent as to the status of the loan modification and what *she* was supposed to do to satisfy the lender's demands." *See* Compl. ¶¶ 76-78, 84 (emphasis added). But Warren never alleges that he submitted a loan mitigation application or that PNC delayed review of such. *See generally id*. Instead, the essence of his complaint is that PNC *never* provided him information about this process, as required by the law. And the allegations that could support a claim under the "unfair" prong are not clearly tied to a public policy or alleged to be "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" to support his claim. *See Adobe Sys.*, 66 F. Supp. 3d at 1226. Put simply, Warren needs to be more specific with his allegations about his "unfair" UCL claim.

The same is true for any claim under the "fraudulent" prong of the UCL, which is subject to Federal Rule of Civil Procedure Rule 9(b)'s heightened standard of pleading. *See Beatty v. PHH Mortg. Corp.*, No. 19-CV-05145-DMR, 2019 WL 6716295, at *14 (N.D. Cal. Dec. 10, 2019). "'Fraud' is an 'intentional misrepresentation, deceit, or concealment of material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.'" *See id.* (citing Cal. Civ. Code § 3294(c)(3)). The complaint alleges that PNC acted "purposefully" with regard to the loan modification process—for example, that it "purposefully caused a lengthy delay," and "purposefully impeded timely loss mitigation denial or approval while expressing that plaintiff are [sic] in review." *See* Compl. ¶¶ 77-78. Again, these allegations are not relevant to Warren's underlying case. And the complaint does not appear to allege that PNC acted intentionally when it failed to provide Warren the required information. *See generally*.

Although the UCL claim may proceed as pleaded under the "unlawful" prong based on the predicate violations of the HBOR and RESPA, more is needed to state a UCL claim under the "unfair" or "fraudulent" theories of liability.

## CONCLUSION

PNC's motion to dismiss is GRANTED in part and DENIED in part, with leave to amend the deficiencies described above unless otherwise noted. Any amended complaint is due within 20 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: April 30, 2023

William H. Orrick
United States District Judge

17